BUTLER *v*. CITY OF LITTLE ROCK.

5-2070                                                    332 S. W. 2d 812

Opinion delivered March 14, 1960.

*Langston & Walker, Frank Holt,* Prosecuting Attorney, By: *H. Clay Robinson,* Deputy Prosecuting Attorney, for appellant.

*Joseph C. Kemp* and *William M. Stocks,* for appellee.

*James L. Sloan, Brief Amicus Curiae* for Ark. County Judges Assoc.

*Glenn G. Zimmerman, William G. Fleming, Brief Amicus Curiae* for Ark. Municipal League.

PAUL WARD, Associate Justice. The sole question presented by this appeal is a constitutional one involving

the validity of the extra-territorial provisions of Act 186 of 1957, which Act provides for the creation of City Planning Commissions in cities of the first and second class. The question arose in the manner and under the circumstances hereinafter presently set out.

The appellants on this appeal, Perry L. Butler and Horace Edward Meeks, each owned a parallel and adjoining strip of land containing 5 acres, each approximately 150 feet wide east and west and 1,320 feet long north and south lying in the Southwest Quarter of the Southeast Quarter of Section 35, Township 1 North, Range 13 West in Pulaski County, situated less than five miles from the corporate limits of Little Rock. Desiring to develop and sell said property for residential building purposes they had an engineer to prepare a Plat showing the said land divided into 22 lots with set-back lines and a street 50 feet wide running north and south between the two parcels. They also prepared and executed a writing called a "Bill of Assurance" which described the aforesaid property and which prescribed rules and regulations for the location and construction of residences. The document was also signed and approved by the Peoples Building and Loan Association as the holder of a lien on the above mentioned property.

When appellants presented the Bill of Assurance and the Plat to the Circuit Clerk of Pulaski County, together with the proper fees, for the purpose of having the same recorded in the proper record, the Clerk refused to accept them. The sole and only reason assigned by the Clerk for not accepting the papers for recordation was that they did not bear the approval of the City Planning Commission of the City of Little Rock.

Thereon appellants filed a petition in the Pulaski County Circuit Court praying that a Writ of Mandamus be issued against the Circuit Clerk commanding and directing him to record the Plat and Bill of Assurance. The Clerk answered the above petition stating, in effect, that there was an apparent conflict in the law regarding his duty to accept the said papers for recordation; that Act

186 of 1957 appears to provide that he should not file them for record if they were not approved by the City Planning Commission, while on the other hand Act 202 of the Acts of 1957 apparently gave the Pulaski County Planning Board certain jurisdiction over the development of land outside the corporate limits of Little Rock. Because of the above apparent conflict the Clerk asked the Court to declare his rights, duties, and responsibilities. The City of Little Rock responded to appellants' petition to the effect that the Clerk had no right under Act 186 of 1957 to record the Plat without its having been approved by the City Planning Commission. The County Judge of Pulaski County intervened and took the position that since the lands involved were county lands and not within any corporate limits their development is controlled by Act 202 of 1957 which provides for County Planning Boards and he wanted the Court to say to what extent, if any, said Act 202 of 1957 and Act 186 of 1957 were unconstitutional.

After a hearing the trial court refused to issue the Writ of Mandamus and thereby refused to direct the Circuit Clerk to record the Plat and Bill of Assurance. In doing so it made a written statement of its ''Finding of Facts'' and ''Memorandum Opinion'' which, in a very thorough and lucid manner, assigned reasons and authorities to sustain its holding and which have been very helpful to this Court. In addition to briefs by the parties above mentioned the Court has been favored with briefs, *amicus curiae,* by the Arkansas County Judges Association and by the Arkansas Municipal League.

Act 186, Section 5c (the last paragraph), says that ''the County Recorder shall not accept any Plat for record without approval of the Planning Commission''. It is conceded that the Little Rock Planning Commission did not give its approval in this instance. Therefore, it is perfectly obvious that the trial court, in refusing to require the County Clerk to record the Plat and Bill of Assurance, must be affirmed, UNLESS, of course, said Act 186 is for some reason void and ineffective. Appellants

take the position that the Act is ineffective for the reason that it is unconstitutional. The principal reason, they say, the Act is unconstitutional is because it conflicts with Article 7, Section 28 of our Constitution. The conflict, say appellants, lies in the fact that the Act deprives the County Court of its original and exclusive jurisdiction over roads and necessary internal improvements in unincorporated territory.

Article 7, Section 28 of the Constitution reads, in all parts material herein, as follows:

> "The County Courts shall have exclusive original jurisdiction in all matters relating to County taxes, *roads,* bridges . . ., and in every other case that may be *necessary to the internal improvement and local concerns* of the respective counties". (Emphasis Supplied)

Act 186 of 1957, which provides for the creation of City Planning Commissions in cities of the first and second class, contains a comprehensive enumeration of the powers and duties of the Commission relative to making and recording Planning Area Maps, Public Improvement Programs, Land Use Plans, Community Facilities Plans, Zoning, Ordinances and a Master Street Plan. The portion of the Act objectionable to appellants is found in Section 3.1 which in all material parts reads as follows:

> "The territorial jurisdiction of the legislative body of the city having a Planning Commission for the purpose of this Act shall include all land lying within five (5) miles of the corporate limits".

It appears to us that the language used in Article 7, Section 28, above quoted, is so clear that it admits of only one interpretation and that is this: Where there is a conflict over the exercise of jurisdiction (over matters mentioned in said Section 28) between the County Court and any creature of the Legislature the latter must give way. We are here concerned primarily, though not necessarily exclusively, with jurisdiction over roads in an unincorporated portion of the County. In the case of *Road Im-*

*provement District No. 1* v. *Glover*, 89 Ark. 513, 117 S. W. 544, this Court clearly affirmed the plain language in the Constitution relative to the exclusive jurisdiction of the County Court over roads.

What we have above said does not mean, however, that the trial court must be reversed, because we are not here presented with a conflict between the County and the City. Certainly the County and the City are not attempting to exercise control or jurisdiction over the same thing or the same subject matter, and they may never do so insofar as this record shows. It is not pointed out, and we do not understand, that the matter of recording or not recording a Plat in any way affects the jurisdiction of the County Court over county roads or internal improvements.

Every intendment of the law is in favor of the constitutionality of Act 186 and also Act 202 of 1957. The benefits to be derived by the general public are too obvious and far reaching to be lost if they, or a major portion thereof, can be retained within the framework of our Constitution, and we think they can. The overall principle of Zoning and Planning laws, even to the extent of extra-territorial jurisdiction, is generally approved by this and other courts. See *Newton Circuit Clerk* v. *American Security Company*, 201 Ark. 943, 148 S. W. 2d 311 and *Prudential Co-op Realty Co.* v. *City of Youngstown*, 118 Ohio St. 204, 160 N. E. 695. The apparent attitude taken by the courts relative to zoning in general is concisely stated in *58 Am. Jur. P. 947, Zoning, Validity of Laws and Regulations, § 14,* this way: "There is no fundamental objection to zoning laws and ordinances so long as they apply without unnecessary discrimination and are reasonable in their scope and operation; within these limits they are a justifiable exercise of the police power and are not open to objections upon the ground of privileges and immunities of citizens, interference with vested rights, or the taking of property without due process of law".

This State has a moderately long history of Planning legislation, unsuccessfully challenged so far in its

major aspect. See Act 108 of 1929, Act 295 of 1937, and Act 186 of 1957 pertaining to Planning by cities of the first and second classes; and Act 246 of 1937, Act 353 of 1953, and Act 202 of 1957 pertaining to County Planning. In addition to the above we have Act 56 of 1945, Act 164 of 1945, and Act 289 of 1959, which all deal with surveys and plats outside incorporation boundaries. Running through all of these Acts are ambiguities and conflicts which we are not called upon, nor are we able at this time, to reconcile.

By this opinion we are in effect holding that Act 186 of 1957 is not, as to the issue here raised, unconstitutional, and much good may be realized by cities and counties by working in cooperation under the provisions of said Act 186 and Act 202 of 1957. To put it another way, as we see it, the City can follow one of two courses in implementing Act 186. *One.* The City can secure the approval of the County Court to its projected plans. In such event it seems that all questions of jurisdictional encroachment would be eliminated. *Two.* It can, as it appears to be doing now, proceed without the County Court's approval. In this event it is possible of course that the County Court will never attempt to exert any jurisdiction it may have in the matter of roads or other internal improvement matters in conflict with City plans. On the other hand, as we have pointed out, the City would be taking the calculated risk. Because of the alternatives set out, we can appreciate the wisdom of the Legislature in not *requiring* the approval of the County Court to any City plans.

Again, we reaffirm the narrow ground upon which we affirm the trial court, and make it clear that we are not hereby approving, as reasonable, plans and ordinances of which we have no knowledge.

Affirmed.

JOHNSON, J., dissents.

JIM JOHNSON, Associate Justice, dissenting. When the present case reached this Court, my first thought was

that in all fairness I should disqualify myself from hearing the matter. This thought was based upon the fact that the small farm on which I live is located in a rural area within five miles of two municipalities which could possess City Planning Commissions. I was personally concerned with the denial of the right to vote for or against the officials authorized to dictate to me the conditions under which I could use and develop my property under the terms of Act 202 of 1957, and Act 186 of 1957.

It has been argued that in this modern day, planning commissions are necessary for progress. Certainly there is a great deal of merit to this argument. However, the validity of the argument depends upon what is considered to be progress. It has been my observation that most rural people in this state live in the country by choice and a great number of them such as myself live in the country principally to escape the mass regimentation that the Acts here in question are calculated to contribute to. Yes, it can be said that in the absence of regulation some people might build a pig pen. The truth of the matter is that some of us country people might have every intention of building a pig pen. If so, we feel that we have every right to choose to do so. Freedom of choice is the greatest freedom we in this nation enjoy, or did enjoy until the United States Supreme Court by judicial fiat set out to destroy that right.

The present laws of Arkansas, whether they are fair or unfair, are ample to allow a municipality the right to annex property contiguous with their boundaries. I don't think it would be an unreasonable burden to require that such property which the city seeks to control be incorporated into the city before control is assumed. With the strong feelings I have on this matter, I probably should have disqualified but in the absence of an offer to disqualify by the other members of the Court who, with the exception of one, all reside within the corporate limits of the appellee, I chose to remain.

Article 7, Section 28 of the Constitution reads, in all parts material herein, as follows:

"The County Courts shall have exclusive original jurisdiction in all matters relating to County taxes, roads, bridges . . ., and in every other case that may be necessary to the internal improvement and local concerns of the respective counties."

It is fundamental in the law that municipal corporations have no extra-territorial powers but their jurisdiction ends at the municipal boundaries. 37 Am. Jur. Municipal Corporations, § 122, p. 736; 62 C.J.S., Municipal Corporations, § 141, p. 283; McQuillin, Municipal Corporations, § 10.07. The legislature may, and in many instances has, authorized the exercise of municipal authority outside the legal limits of the municipality, but such must be within and subject to the state's constitutional limitations.

With these fundamental principles in mind, it must be determined what constitutional limitations, if any, are imposed on the state legislature.

It must be admitted by all concerned that Art. 7, § 28 of the Arkansas Constitution, grants to the county courts exclusive original jurisdiction over county roads. *Sanderson* v. *Texarkana,* 103 Ark. 529, 146 S. W. 105; *Parkview Land Co.* v. *Road Improvement Dist. No.* 1, 92 Ark. 93, 122 S. W. 241; *Road Improvement Dist. No.* 1 v. *Glover,* 89 Ark. 513, 117 S. W. 544. This does not mean city streets nor state highways, but merely county roads. As a result, then, the county court must have the power, and, therefore, has the duty to plan, construct, maintain, alter, relocate, and abandon county roads.

How could the county courts execute this constitutional power if Act 186 is law? Under the act, municipalities could pass ordinances adopting a street plan for streets outside the city in the five-mile area. § 4 (c). The planning commission would be empowered to make regulations to enforce this plan. § 5 (c) and 5 (d) and (e). The development and use of the land in the five-mile area could be controlled by the city. § 4 (a). No plat for the dedication of land in the five-mile area could be accepted for recording unless passed on by the city. § 5 (c). Under these sections it would be possible for the city to locate,

plan, and abandon streets, roads and highways; it could determine the width, points of entry, types of construction and types of use of streets, roads and highways. It is well settled that the legislature may impose upon political subdivisions other than counties the responsibility of maintaining streets and roads. *Parkview Land Co.* v. *Road Improvement District No. 1, supra; Sanderson* v. *Texarkana, supra.* But here, although the city is purportedly empowered to determine the location, type of construction and all other details of roads in what has always been thought to be the county's jurisdictional area, the city is not made responsible for their upkeep and maintenance after construction.

The proponents of the act may say this is an extreme interpretation of its provisions, but it is an inescapable conclusion. What better ways is there to impose the city's will on the development of county roads in the five-mile area than by refusing to approve plats for recordation or by "denial of building permits and use permits." The county would also be hamstrung by the provisions of § 3 (f): "no public way, . . . building or structure . . . shall be acquired, constructed or authorized unless . . . submitted to the planning commission for . . . approval . . . " Can the majority say the things here set out do not constitute the internal improvements specifically reserved to the county court under the Constitution?

The question here is not one of good intentions, or what responsible commissions and city councils or boards might do, but whether this act infringes upon the powers of county courts under the Arkansas Constitution. Exclusive original jurisdiction can only mean what the words say. Any encroachment on this jurisdiction by a municipality is unconstitutional.

I reach this conclusion based not on my personal feelings in this matter but upon the clear and unmistakable language of the Constitution as it is written.

For the reasons stated above, I respectfully dissent.